IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| B.M., a minor, by his parents SHEENA DORMAN and DILLON MING, as next friends, and SHEENA DORMAN and DILLON MING, individually<br>1151 Chattie Drive<br>Centerton, Arkansas 72719<br><br>　　PLAINTIFFS<br><br>v.<br><br>ANNE ARUNDEL MEDICAL CENTER, INC<br>2001 Medical Parkway<br>Annapolis, MD 21401<br>Serve On:　Resident Agent<br>　　　　　The Corporation Trust, Inc.<br>　　　　　351 West Camden Street<br>　　　　　Baltimore, Maryland 21201<br><br>and<br><br>ANNAPOLIS OB-GYN ASSOCIATES P.A.<br>2000 Medical Parkway<br>Suite 304<br>Annapolis, MD 21401<br>Serve On:　Resident Agent<br>　　　　　William M. Davidow, Jr.<br>　　　　　Miles & Stockbridge, P.C.<br>　　　　　100 Light Street<br>　　　　　Baltimore, Maryland 21202<br><br>and<br><br>RICHARD G. WELCH, M.D.<br>Annapolis OB-GYN Associates, P.A.<br>2000 Medical Parkway<br>Suite 304<br>Annapolis, Maryland 21401<br><br>　　DEFENDANTS | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | FILE NO.:<br><br><br><br><br><br><br><br><br><br>**COMPLAINT AND DEMAND<br>FOR JURY TRIAL** |

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

COMES NOW Plaintiffs, B.M., a minor, by his parents, Sheena Dorman and Dillon Ming, as Next Friends, and Sheena Dorman and Dillon Ming, individually, by and through their attorneys, Seth L. Cardeli, Sharon R. Morgan, Dov A. Apfel, and Janet, Jenner & Suggs, LLC, and hereby sue the following Defendants, for cause: Anne Arundel Medical Center, Inc., Annapolis OB-GYN Associates, P.A., and Richard G. Welch, M.D. In support thereof, Plaintiffs respectfully state as follows:

## INTRODUCTION

This is a medical negligence action arising from acts and/or omissions related to the medical care and treatment of Sheena Dorman and her son B.M. by the following Defendants: Anne Arundel Medical Center, Inc., directly and as the actual and/or apparent principal, master, and/or employer of physicians, midwives, nurses, and/or technicians, including, but not limited to, Richard G. Welch, M.D. and Kristen Becker, R.N., who were responsible for rendering medical treatment to Sheena Dorman and B.M.; Annapolis OB-GYN Associates, P.A., directly and as the actual and/or apparent principal, master, and/or employer of physicians, midwives, nurses, and/or technicians, including, but not limited to, Richard G. Welch, M.D. and Kristen Becker, R.N., who were responsible for rendering medical treatment to Sheena Dorman and B.M.; and Richard G. Welch, M.D., individually, and as actual and/or apparent agents, principals, servants, and/or employees of Annapolis OB-GYN Associates, P.A. and Anne Arundel Medical Center, Inc. On June 29, 2013, Sheena Dorman, approximately 37 weeks pregnant, presented to Anne Arundel Medical Center at approximately 16:24 in active labor. At admission, it was noted that Ms. Dorman was dilated 5 cm, 50% effaced, and the fetus was remote from delivery at a -3 station. Early the next morning, at approximately 1:28, the infant Plaintiff B.M., was delivered after a shoulder dystocia. In violation of the applicable standard of

care, excessive traction and improper maneuvers were utilized by the Defendants. In violation of the applicable standard of care, the Defendants failed to properly manage the labor and delivery, failed to recognize and/or appropriately respond to the obvious obstetrical emergency, and failed to safely and timely deliver B.M.

The Defendants' violations in the standard of care have caused Plaintiff B.M. to suffer, among other things, severe, painful, permanent disabling injuries, including, but not limited to: Erb's Palsy; neurological injuries; cognitive and motor dysfunction; speech and language difficulties; pain, suffering, and mental anguish; diminished enjoyment and quality of life; developmental delays; diminished earning capacity; and economic losses, including, but not limited to lost earning capacity and unnecessary medical expenses.

Additionally, as a further direct and proximate result of the Defendants' violations in the standard of care, Plaintiffs Sheena Dorman and Dillon Ming have incurred, and will incur in the future, expenses for the medical, surgical, nursing, therapeutic, rehabilitative, and custodial care and attention for their son, Plaintiff B.M., as well as for specialized equipment, housing, education, and other needs to accommodate his medical conditions.

## THE PARTIES

1.  At all times relevant to the events at issue, Plaintiff B.M. and his parents, Plaintiffs Sheena Dorman and Dillon Ming were residents and citizens of the State of Maryland, residing in Anne Arundel County, Maryland. Plaintiff and his parents are currently residents and citizens of the State of Arkansas, residing in Benton County. At all relevant times pertinent hereto, Plaintiffs B.M. and Sheena Dorman were patients of each of the Defendants named herein, for the purpose of receiving medical care and treatment.

2. At all relevant times pertinent hereto, Anne Arundel Medical Center, Inc. (hereinafter referred to as "AAMC"), a business entity organized under the laws of the State of Maryland, held itself out to the public as competent to provide medical services, and did provide such medical services to Ms. Dorman and her son, B.M., by and through its actual and/or apparent agents, principals, servants, and/or employees, including, but not limited to, Richard G. Welch, M.D. and Kristen Becker, R.N., each of whom acted within the scope of his/her authority at all times.

3. At all relevant times pertinent hereto, Defendant Annapolis OB-GYN Associates, P.A. (hereinafter referred to as "Annapolis OB-GYN"), a business entity organized under the laws of the State of Maryland, held itself out to the public as competent to provide medical services, and did provide such medical services to Ms. Dorman and her son, B.M., by and through its actual and/or apparent agents, principals, servants, and/or employees, including, but not limited to, Richard G. Welch, M.D. and Kristen Becker, R.N., each of whom acted within the scope of his/her authority at all times.

4. At all relevant times pertinent hereto, Defendant Richard G. Welch, M.D. (hereinafter referred to as "Dr. Welch") was licensed to practice medicine in the State of Maryland in the field of obstetrics and gynecology, held himself out as competent to provide medical care and treatment, including, but not limited to, management of pregnant patients, and provided such medical services to Ms. Dorman and her son, B.M. At all relevant times pertinent hereto, Dr. Welch conducted his business, was an agent, principal, servant, and/or employee of Annapolis OB-GYN and/or AAMC, and habitually engaged in his vocation in Anne Arundel County, Maryland, among other places.

## JURISDICTION AND VENUE

5.      Pursuant to MD. CODE ANN., CTS. & JUD. PROC. §3-2a-04 (a) and (b), Plaintiff filed a Statement of Claim and a Certificate of Qualified Expert and Information Report signed by Yvonne Gomez-Carrion, M.D. and an Election to Waive Arbitration was also filed with the Health Care Alternative Dispute Resolution Office of Maryland, copies of which are attached hereto as Exhibits A and B. The damages sought exceed more than the limit of concurrent jurisdiction of the District Court.

6.      A copy of the Order of Transfer for *B.M., a minor by his parents Sheena Dorman and Dillon Ming as next friends v. Anne Arundel Medical Center, Inc., et.al.*, HCA No. 2015-134 is attached as Exhibit C.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). Plaintiffs are residents and citizens of the State of Arkansas. Defendants Anne Arundel Medical Center, Inc., Annapolis OB-GYN Associates, P.A., and Richard G. Welch, M.D. are corporations and/or citizens with their principal place of business in the State of Maryland. Therefore, the parties are diverse in citizenship.

8.      Venue is proper in this Court by virtue of 28 U.S.C. § 1391 as (1) all of the Defendants reside in this district; and (2) a substantial part of the events or omissions giving rise to the claim occurred in this district.

9.      Plaintiffs' claim for relief exceeds $75,000, exclusive of interest and costs, therefore satisfying the amount in controversy requirement of 28 U.S.C. § 1332(a).

## FACTUAL BACKGROUND

10.     On June 29, 2013, at or about 16:24, Ms. Dorman, approximately 37 weeks pregnant, presented to AAMC. Ms. Dorman's obstetrical history was significant for a difficult

delivery of an 8 lb 13 oz child that necessitated the utilization of forceps. At an office visit on June 27, 2013, her cervix was dilated 3 cm, 50% effaced, and the fetus was at a -3 station.

11. At or about 16:55, Dr. Welch noted that the patient was being admitted in active labor. Dr. Welch's noted that Ms. Dorman was dilated 5 cm, 75% effaced, and remote from delivery at a -3 station. He also noted that Ms. Dorman had a normal obstetrical history, had been having contractions since 11:00 that morning, and that fetal movement was normal.

12. At approximately 21:33, Dr. Welch noted that Ms. Dorman was in prodromal labor, the cervix was dilated 5-6 cm, and Ms. Dorman did not yet desire an epidural. At this time, Dr. Welch artificially ruptured the membranes with copious clear fluid.

13. At or about 21:57, an epidural was placed by Dr. Mukherje.

14. At approximately 22:30, a vaginal examination by Kristen Becker, R.N. (hereafter referred to as RN Becker) found the cervix to be dilated 7 cm. RN Becker noted that variable decelerations in the fetal heart rate were observed at or around this time.

15. At approximately 0:30 on June 30, 2013, RN Becker noted that the cervix was dilated 9 cm.

16. At or about 0:50, RN Becker noted that the cervix was completely dilated and that variable decelerations were still occurring.

17. At approximately 1:05, the patient began pushing with contractions according to RN Becker. Variable decelerations in the fetal heart rate continued to be noted.

18. Prior to delivery, according to Dr. Welch, a turtle sign was encountered. A turtle sign is an indication of shoulder dystocia, an obstetrical emergency that requires the implementation of particular maneuvers to avoid injury to the baby. Dr. Welch noted that after encountering the turtle sign, he applied downward traction with minimal descent. Thereafter, Dr.

Welch noted that the head of the patient's bed was lowered flat and McRobert's maneuver was performed with traction causing successful delivery of the anterior shoulder. According to Dr. Welch's note, the shoulder dystocia lasted 30 seconds.

19. At or about 1:18, B.M. was born weighing approximately 4,810 grams. B.M. had Apgar scores of 4, 7, and 8 at one, five, and ten minutes of life. While Dr. Welch's note indicates that personnel from the neonatal intensive care unit were in attendance, the neonatal records show that they did not arrive until after the delivery.

20. The neonatology notes that were entered by Donna M. Trageser, CRNP, the medical provider who provided neonatal care to B.M., reflect that neonatology was called by a "baby code" alarm after spontaneous vaginal delivery with tight nuccal cord x1. When the NICU team arrived in the delivery room, B.M. was noted to have already been delivered and was on a pre-warmed bed. B.M.'s heart rate was in the 90s and he was noted to have poor respiratory effort, hypotonia, and cyanosis. The NICU team provided oral suctioning, tactile stimulation, oropharyngeal suctioning, and oxygen. Missing from the initial Neonatology Service Consultation Note was any indication that B.M. had a shoulder dystocia or injury to his arm. In fact, it is indicated that his extremities were normal. B.M. was admitted to the NICU secondary to respiratory distress with grunting and continued hypotonia. On July 4, 2013, B.M. was discharged from AAMC with diagnoses of possible Erb's palsy and respiratory distress syndrome.

21. As a result of the violations in the standard of care by the Defendants, B.M. suffered a severe and permanent brachial plexus injury to his left side. Today, B.M. suffers from the sequellae of that injury, including, but not limited to physical and motor disabilities, developmental delays, cognitive impairments, and language defects.

22. The risks and dangers to B.M. were obvious and should have been apparent to the Defendants, and they all knew or should have known that the failure to implement timely and appropriate interventions, and/or to expedite the delivery would expose B.M. to serious and obvious risks, including, but not limited to permanent and severe disability, brain damage, or even death.

23. The foregoing negligent acts and omissions, as more particularly set forth below, directly and proximately caused B.M. to suffer catastrophic injury, resulting in permanent and severe disability and impairment, including, but not limited to Erb's Palsy, severe and permanent physical, developmental, neurological, cognitive, and emotional injuries and other damages.

## COUNT I – MEDICAL NEGLIGENCE

24. Plaintiffs hereby restate and re-allege paragraphs 1 through 23, as if fully set forth herein, and further allege as follows:

25. Defendants Annapolis OB-GYN and/or AAMC, directly and by and through their actual and/or apparent agents, principals, servants and/or employees, including, but not limited to Dr. Welch and RN Becker, and Dr. Welch individually, owed Plaintiffs the non-delegable duty to exercise that degree of care and skill which reasonably competent like Defendants would have exercised under the same or similar circumstances.

26. Defendant Dr. Welch, acting individually and/or as the actual and/or apparent agent, principal, servant and/or employee of Defendants Annapolis OB-GYN and/or AAMC breached his non-delegable duty to the Plaintiff by failing to exercise such degree of skill and diligence required of Defendants acting under the same or similar circumstances, breached his duties and violated the applicable standards of care, and was negligent in the following ways, among others:

a. Failing to accurately determine the estimated fetal weight and/or the likelihood of safe vaginal delivery;

b. Failing to properly appreciate Ms. Dorman's risk factors for shoulder dystocia;

c. Failing to counsel Ms. Dorman regarding her delivery options in light of the increased risk that shoulder dystocia would be encountered during the delivery;

d. Failing to arrange proper support personnel to be present prior to B.M.'s delivery to assist with corrective measures;

e. Failing to recognize the risks of brachial plexus injury under the circumstances;

f. Failing to properly perform maneuvers to correct B.M.'s shoulder dystocia without causing harm;

g. Utilizing excessive downward traction after signs of shoulder dystocia were apparent;

h. Failing to meet the standard of care for delivering large babies, and failing to properly perform a medically accepted maneuver or series of maneuvers to deliver the baby once the threat of shoulder dystocia was apparent or should have been apparent;

i. Failing to initiate timely interventions and treatments;

j. Failing to expedite the delivery of B.M.;

k. Failing to communicate with the patient's other Defendants, including, but not limited to RN Becker and/or Donna M. Trageser, CRNP;

l. Failing to adequately instruct, train, and/or supervise the labor and delivery nurses caring for Ms. Dorman and B.M.;

m. Failing to establish and/or follow and/or enforce appropriate policies, procedures, and/or protocols for obstetrical patients such as Ms. Dorman and B.M.;

n. Failing in other ways to manage Ms. Dorman's labor in accordance with the applicable standards of care, including, but not limited to: failing to communicate and act as a patient advocate;

o. Failing to immediately deliver B.M. and otherwise continuing to delay delivery;

p. Failing to provide information and informed consent to Ms. Dorman in order to allow her the opportunity to decide whether to continue with a trial of labor when other interventions and treatments; and

q. Other negligent acts or omissions which may become apparent throughout the course of discovery.

27. Defendants Annapolis OB-GYN and AAMC are vicariously liable for the acts and omissions of its actual and/or apparent agents, principals, servants and/or employees, including, but not limited to Dr. Welch and RN Becker, who provided care to Plaintiffs Sheena Dorman and B.M.

28. In addition, Defendants Annapolis OB-GYN and AAMC, directly and through their actual and/or apparent agents, principals, servants, and/or employees, including, but not limited to Dr. Welch, RN Becker, and/or the labor and delivery staff caring for Ms. Dorman and her baby B.M., were negligent by failing to exercise such degree of skill and diligence required of Defendants acting under the same or similar circumstances in the community of the Defendants or a similar community and by failing in the following particulars, among others, as may be determined through legal discovery in this action:

a. Failing to adequately instruct, train, and/or supervise its agents, principals, servants, and/or employees;

b. Failing to provide appropriately trained and skilled personnel to care for Ms. Dorman and B.M. during labor, delivery, and during the neonatal period;

c. Failing to establish and/or follow and/or enforce appropriate policies, procedures and/or protocols for the management of patients in the same or similar circumstances of Ms. Dorman and B.M.;

d. Failing to properly credential, supervise, and/or provide adequate training to agents, principals, servants, and/or employees, including, but not limited to, the supervision of Dr. Welch, RN Becker, and/or the labor, delivery, and neonatal staff caring for Ms. Dorman and B.M.;

e. Failing to establish and/or promote and/or enforce appropriate chain of command policies, procedures, and/or practices in response to physicians' actions or inactions that are likely to lead to serious injury or death;

f. Failing to instruct labor and delivery staff, including, but not limited to RN Becker, on the importance of invoking the chain of command to effectuate a timely delivery and being patient advocate;

g. Failing to instruct labor and delivery staff, including, but not limited to RN Becker, on calling an obstetrician to immediately deliver patients in the same or similar circumstances as Ms. Dorman and otherwise continuing to delay delivery;

h. Failing to instruct labor and delivery staff, including, but not limited to RN Becker, on managing Ms. Dorman's condition and that of her unborn child in accordance with the applicable standards of care;

i. Failing in other ways to implement and enforce policies, procedures, guidelines, drills, and training for identifying and safely treating obstetrical emergency, including, but not limited to shoulder dystocia;

j. Failing in other ways to implement and enforce policies, procedures, guidelines, drills, and training for the preparation and performance of urgent, emergency, and/or STAT cesarean sections; and

k. Other negligent acts or omissions, which may become apparent throughout the course of discovery.

29. As a direct and proximate result of the individual, successive, concurrent, joint, and several negligence of Defendants Annapolis OB-GYN and/or AAMC, directly and/or vicariously through their employees, servants, principals, and actual and/or apparent agents, including, but not limited to Dr. Welch and RN Becker, and Dr. Welch individually, jointly and severally, and without any negligence on the part of the Plaintiffs contributing thereto, the minor Plaintiff, B.M., has received, and will continue to require, substantial medical, nursing, attendant, and related care, various types of therapies such as physical, occupational, speech, rehabilitation, psychological, and pharmaceutical, and other care including specialized devices, equipment, transportation, education, and housing, all for which shall require expenditure of significant sums of money. In addition, the minor Plaintiff, B.M., has further sustained a loss of income and diminished future wage earning capacity. Had these Defendants adhered to the applicable standard of care, Plaintiff B.M. would not have suffered as he has in the past and will continue to suffer in the future, both economically and noneconomically.

WHEREFORE, Plaintiffs request that judgment be entered against Defendants, Richard G. Welch, M.D., Annapolis OB-GYN Associates, P.A., and Anne Arundel Medical Center, Inc.,

jointly and severally, for a reasonable amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and disbursements as allowed by law.

### COUNT II – PARENTAL CLAIMS

30. Plaintiffs hereby restate and re-allege paragraphs 1 through 29, as if fully set forth herein, and further allege as follows:

31. As a direct and proximate result of the individual, successive, concurrent, joint, and several negligence of Defendants Annapolis OB-GYN and/or AAMC, directly and/or vicariously through their employees, servants, principals, and actual and/or apparent agents, including, but not limited to Dr. Welch and RN Becker, and Dr. Welch individually, jointly and severally, as alleged herein, and without any negligence on the part of the Plaintiffs contributing thereto, and the resulting damages to their minor son, B.M., Plaintiffs Sheena Dorman and Dillon Ming have incurred, and will continue to incur in the future, expenses for the medical, surgical, nursing, therapeutic, rehabilitative and custodial care and attention for their son, as well as for specialized equipment, housing, education, and other needs to accommodate his medical conditions, all of which will exceed Seventy-Five Thousand Dollars ($75,000.00).

32. As a further direct and proximate result of individual, successive, concurrent, joint, and several negligence of Defendants Annapolis OB-GYN and/or AAMC, directly and/or vicariously through their employees, servants, principals, and actual and/or apparent agents, including, but not limited to Dr. Welch and RN Becker, and Dr. Welch individually, jointly and severally, as alleged herein, and without any negligence on the part of the Plaintiffs contributing thereto, and the resulting damages to their minor son, B.M., Plaintiffs Sheena Dorman and Dillon Ming have been deprived, and will be further deprived, of an emotional relationship with their

son, and a loss of services, companionship, and consortium to the present and into the future, all of which will exceed Seventy-Five Thousand Dollars ($75,000.00).

WHEREFORE, Plaintiffs Sheena Dorman and Dillon Ming request that judgment be entered against Defendants, Richard G. Welch, M.D., Annapolis OB-GYN Associates, P.A., and Anne Arundel Medical Center, Inc., jointly and severally, for a reasonable amount in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs, and disbursements as allowed by law.

_____
Seth Cardeli (Bar #07212)
*scardeli@myadvocates.com*
Sharon R. Morgan (Bar #27927)
*smorgan@myadvocates.com*
Dov Apfel (Bar #07187)
*dapfel@myadvocates.com*

Janet, Jenner & Suggs, LLC
1777 Reisterstown Road, Suite 165
Baltimore, Maryland 21208
410-653-3200
410-653-9030 (facsimile)

*Attorneys for Plaintiffs*