IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHEENA DORMAN, et al.            *

                Plaintiffs       *

        vs.                      *    CIVIL ACTION NO. MJG-15-1102

ANNE ARUNDEL MEDICAL CENTER,     *
et al.
                Defendants       *

*       *       *       *       *       *       *       *       *

<u>MEMORANDUM AND ORDER RE: MOTIONS IN LIMINE</u>

    The Court has before it the following motions and the

materials submitted relating thereto:

    1.  Defendants' Motion In Limine To Preclude Evidence That A
        Cesarean Section Delivery Was Required Under The Standard
        Of Care [ECF No. 89],

    2.  Plaintiffs' Motion In Limine To Exclude Assumption Of
        Risk [ECF No. 92],

    3.  Defendants' Motion In Limine To Exclude Testimony
        Regarding "Personal Care Assistance" Damages [ECF No.
        93],

    4.  Plaintiffs' Motion In Limine To Preclude Cumulative
        Expert Testimony [ECF No. 94],

    5.  Plaintiffs' Motion In Limine To Preclude Defendants From
        Offering Undisclosed Expert Testimony [ECF No. 95],

    6.  Plaintiffs' Motion In Limine To Exclude Speculation That
        B.M.'s Left Arm Was Posterior [ECF No. 96],

    7.  Plaintiffs' Motion In Limine To Exclude Consideration Of
        Causation At Trial [ECF No. 97],

    8.  Defendants' Motion In Limine To Preclude References To
        "Alterations" Of The Medical Record [ECF No. 98],

9.  Defendants' Motion In Limine To Preclude "Golden Rule" Or Other Improper "Reptile Theory" Tactics [ECF No. 99],

10. Defendants' Motion In Limine To Preclude Informed Consent Evidence [ECF No. 100], and

11. Defendants' Omnibus Motion In Limine [ECF No. 103].

The Court has held a hearing and has had the benefit of arguments of counsel. In addition to these motions in limine, the Court also heard argument regarding whether Dr. Allen should be permitted to testify solely as a rebuttal witness.

## I.    BACKGROUND

The factual background of this case has been previously stated in the Memorandum and Order Re: Daubert Motions issued on May 4, 2018 [ECF No. 88]. The Court understands the main issue at trial to be the cause of B.M.'s birth injury, specifically, whether the injuries were caused by a violation of the standard of care by Dr. Welch, or whether the injuries were caused by natural maternal forces. Parties have filed multiple motions in limine, each of which is addressed by the Court below.

## II.   MOTIONS IN LIMINE

Motions in limine seek "to exclude anticipated prejudicial evidence before the evidence is actually offered." Changzhou Kaidi Elec. Co. v. Okin Am., Inc., 102 F. Supp. 3d 740, 745 (D. Md. 2015) (citations omitted). They "are 'designed to narrow

the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" Id. "A motion in limine to exclude evidence . . . should be granted only when the evidence is clearly inadmissible on all potential grounds." Emami v. Bolden, 241 F. Supp. 3d 673, 681 (E.D. Va. 2017) (citations omitted).

1. Defendants' Motion In Limine To Preclude Evidence That A Cesarean Section Delivery Was Required Under The Standard Of Care [ECF No. 89]

Plaintiff Sheena Dorman[1] opted for a vaginal delivery. Defendants request the exclusion of any evidence, testimony, or argument that under the standard of care, a cesarean section ("C-Section") delivery for Ms. Dorman was required in lieu of a vaginal delivery.[2] Plaintiffs agree that a C-Section delivery is not part of the standard of care in this case,[3] and the Court will exclude from trial any testimony or argument that a C-Section was required, including any mention of a C-Section

_____

[1] During the pendency of this case, Sheena Dorman's name has been changed to Sheena Ming.

[2] Defendants argue that Plaintiffs have not provided expert testimony to establish that Defendants were required to perform a C-Section. Indeed, Plaintiffs' own OB-GYN expert witness, who will opine on the standard of care, stated at his deposition that a C-Section delivery was not required.

[3] Plaintiffs confirm that their obstetrician witness, Dr. Duboe, will not opine that the standard of care required Dr. Welch to perform a C-Section.

delivery in this case. Defendants' motion is therefore DENIED as moot.

However, Plaintiffs still wish to introduce testimony showing that Dr. Welch may not have been prepared for the risk of a shoulder dystocia. They contend the evidence will show that one of Dr. Welch's partners, Dr. Hays, had already scheduled Ms. Dorman for a C-Section, but that Dr. Welch was not aware of that decision, did not review prior ultrasound records showing that B.M. was a large baby, and did not know the precise size of the baby at the time of delivery.

The Court will allow Plaintiffs' requested testimony only to show a potential lack of concern or assiduousness by Dr. Welch toward Ms. Dorman, which is possibly relevant to his credibility. However, this testimony may not be used to argue that Dr. Welch should have performed a C-Section and may not mention the possibility of a C-Section as an alternative procedure in this case. In other words, there shall be no argument or suggestion that Dr. Welch's pre-delivery actions violated the standard of care although the defense may argue that pre-delivery actions or inactions may be considered as to Dr. Welsh's credibility as claiming he was appropriately concerned for his patients.

2.   Plaintiffs' Motion In Limine To Exclude Assumption Of Risk [ECF No. 92]

On the record of proceedings held May 24, 2018, Plaintiffs stated they are not pursuing a claim for lack of informed consent and Defendants stated they will withdraw their assumption of risk defense.[4]   Accordingly, Plaintiffs' motion in limine to exclude assumption of risk shall be DENIED as moot.

3.   Defendants' Motion In Limine To Exclude Testimony Regarding "Personal Care Assistance" Damages [ECF No. 93]

Plaintiffs' economic expert, Dr. Pacey, has identified costs associated with what have been called "personal care assistance," which refers to the parental costs of providing care for B.M., including transportation to medical appointments, assistance with performing home exercises, and "personal hygiene," in a total amount of $86,200 (including past and future costs).   Defendants request that this evidence be excluded because these are ordinary and expected parenting activities and are not unique to B.M.'s brachial plexus injury. Plaintiffs argue that the personal care damages detailed by Plaintiffs' expert only deal with extraordinary care and services that have occurred and will occur as a result of the

---

[4]   Defendants have also moved to preclude evidence of a lack of informed consent.   See ECF No. 100.

5

injury, above and beyond the costs of taking care of a non-disabled child.

The Court does not find a reasonable basis to exclude this expert evidence or to exclude the $86,200 figure from evidence. Plaintiffs' requested damages for personal care include the costs of Mr. Ming and Ms. Dorman's efforts to transport B.M. to injury related medical appointments (including cross country travel to Philadelphia from Maryland, Arkansas, and North Carolina), to conduct certain personal hygiene for him, and to engage in daily exercise to maximize the function of his injured arm. Their argument is that those damages would not be incurred by parents to take care of a child without a brachial plexus injury.

If there are specific expenses within the $86,200 figure that Defendants contend would apply only to ordinary child care, Defendants may elicit such testimony on cross-examination. The Court is willing, if requested by the defense, to instruct the jury to limit their personal care damages findings to only those that apply to B.M. due to the nature of his injuries.

Accordingly, Defendants' motion is DENIED.

4.    Plaintiffs' Motion In Limine To Preclude Cumulative
      Expert Testimony [ECF No. 94]

Defendants have now designated three standard-of-care

expert witnesses:  Drs. Dickman and Hammond, who are

obstetricians, and Dr. Chauhan, who is a maternal-fetal

specialist.  Plaintiffs argue that allowing Defendants to call

two or three experts to testify about the standard of care would

be unnecessarily cumulative and a waste of time.  They are

concerned that the jury may draw an improper inference that the

number of experts should equate to higher weight.  They request

that Defendants only be allowed to call one standard of care

expert and one causation expert.

Defendants contend that Plaintiffs' motion is premature and

improperly invades trial strategy.  They argue that there is no

requirement of expert witness numerical parity, and that they

have properly designated Drs. Dickman and Hammond and cross-

designated Dr. Chauhan.  They state that these experts have

different backgrounds and experiences and will offer the jury

materially different opinions.

Under the circumstances, the Court does not now find a need

to exclude Defendants' standard of care experts simply because

there are more than one of them.  The Court agrees that

exclusion at this time would be premature because not all of the

experts may be called and their testimony has not yet been

elicited.[5] However, Plaintiffs may renew this motion at trial should the testimony of these three experts be unnecessarily cumulative, and the Court will reconsider the request at that time. The Court is also willing to consider requests from Plaintiffs for a jury instruction that could cure the concerns that Plaintiffs raise (e.g., a jury instruction that the fact that one party called more witnesses than the other does not mean that the jurors should necessarily find the facts in favor of the side offering more witnesses).

As for the causation experts, Plaintiffs have not shown a basis to exclude Defendants' three experts as needlessly cumulative because they have different specialties and will offer different testimony (i.e., pediatric neurosurgeon, pediatric neurologist, and biomedical engineer). In fact, Plaintiffs also intend to call three causation experts and do not propose to limit their own number of experts.

Accordingly, Plaintiffs' motion is DENIED without prejudice.

---

[5] At this stage, the Court finds that the three standard-of-care experts could likely provide testimony from different perspectives that could aid the jury in this complex case. Although Drs. Dickman and Hammond are both obstetricians, they have different types of practices. Dr. Chauhan is a maternal-fetal specialist and will have a different perspective from a practicing obstetrician.

5.    Plaintiffs' Motion In Limine To Preclude Defendants
      From Offering Undisclosed Expert Testimony [ECF No.
      95]

Plaintiffs request that the testimonies of Defendants'

experts Drs. Dickman, Hammond, and Azburg be limited to the

scope of their expert reports and that they be prevented from

opining on causation.[6]  Plaintiffs also request the exclusion of

any testimony by Dr. Suneet Chauhan, who they state was not

cross-designated as an expert.[7]  If Dr. Chauhan's testimony is

allowed by the Court, Plaintiffs request that he also be

precluded from opining on causation because his expert report

did not include any causation opinions.

Defendants argue that they have timely and properly

disclosed these expert opinions (including cross-designating Dr.

Chauhan), and have made them all available for depositions.

They argue that Plaintiffs have been well aware of the opinions

of these experts and are only complaining that the opinions were

not sufficiently detailed in previous expert reports.

The Court agrees that Defendants adequately placed

Plaintiffs on notice of Dr. Chauhan's testimony by (1) notifying

Plaintiffs that they reserve the right to call the experts of

other parties and (2) specifically stating that they would call

---

[6]    Defendants confirm that Dr. Azburg will not testify on
causation and has not been designated as a causation expert.

[7]    Dr. Suneet Chauhan was designated as an expert by Anne
Arundel Medical Center, which is no longer a party to this case.

experts identified by all defendants "including but not limited to Dr. Chauhan." See Def.'s Opp. Exs. 9, 10, ECF No. 114. The Court does not find that Plaintiffs are prejudiced by his testimony. Indeed, Plaintiffs had an opportunity to depose him, took advantage of that opportunity, and have not shown a basis for unfair surprise or prejudice.

Plaintiffs also wish to prevent any of Defendants' standard of care experts to opine about causation, specifically, about the maternal forces of labor.

The Court finds that any discussion of standard of care in this case necessarily touches upon causation. Defendants' standard of care experts will state that in their opinions, Dr. Welch did not violate the standard of care. That very statement also carries a suggestion or inference that something other than Dr. Welch's physical actions caused the injury. The Court will not exclude the standard of care experts from making these types statements, which it finds were properly disclosed in either expert reports or in deposition testimony.

Accordingly, Plaintiffs' motion is DENIED.


6.    Plaintiffs' Motion In Limine To Exclude Speculation
      That B.M.'s Left Arm Was Posterior [ECF No. 96]

Plaintiffs request the exclusion of any "speculation" from Defendants that B.M.'s left arm was posterior. Defendants argue

that Plaintiffs are the ones who intend to speculate about whether B.M.'s left arm was posterior or anterior. Rather, Defendants argue, their experts will consider both possibilities (i.e., anterior and posterior).

If the injured left arm was posterior (i.e., facing down towards the mother's spine), then it will be much more difficult - though perhaps not impossible[8] - for Plaintiffs to show a violation of the standard of care because, according to Defendants, at that point, the baby's head has not been delivered yet and no physician traction would have been applied. In other words, Defendants take the position that if the injured left arm was posterior, the injury must have been caused by something other than physician traction. On the other hand, if the injured left arm is anterior, i.e., facing up towards the mother's belly surface, then both parties agree Plaintiffs could be able to contend that improper physician traction could have caused the injury.

The parties agree that the medical records and evidence in this case do not suggest either way whether B.M.'s injured left arm was posterior or anterior. The Court finds that neither party will be able to elicit testimony or make an argument that

---

[8]    Plaintiffs explain that if the left arm was posterior, they could still argue that "upward traction" could have caused an injury.

B.M.'s left arm was posterior or anterior because there is simply no evidence supporting either position.

However, Plaintiffs wish to introduce expert testimony that "more likely than not," the injured arm was anterior. Neither party is allowed to introduce raw statistical evidence. <u>See, e.g.</u>, <u>Holley v. Pambianco</u>, 613 S.E. 2d 425, 428 (Va. 2005) ("[R]aw statistical evidence is not probative of any issue in a medical malpractice case and should not be admitted."). Nor is either party allowed to elicit testimony that B.M.'s left arm was "more likely than not" anterior if that testimony is based on statistics or any statistical studies that are used to suggest that B.M.'s arm was anterior <u>in this case</u>.[9] However, the parties are allowed to elicit testimony from experts that, in their personal experience with deliveries in the past, they have experienced more anterior shoulder injuries over the course of their career. If requested by the defense, the Court will issue a cautionary jury instruction at the time such expert testimony is elicited, explaining that there is no statistical evidence or study in this case that suggests it could be one or the other.

---

[9]  The Court's decision here is consistent with that of other courts which have found that such an inference is impermissible. <u>See, e.g.</u>, <u>Timblin v. Kent Gen. Hosp. (Inc.)</u>, 640 A.2d 1021, 1025 (Del. 1994) ("Delaware courts have recognized that evidence of statistical probability creates a significant risk of jury confusion and unfair prejudice because such evidence may lead a jury to decide a case based on what happens normally instead of what happened in the case before it.").

Accordingly, Plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

### 7.    Plaintiffs' Motion In Limine To Exclude Consideration Of Causation At Trial [ECF No. 97]

Plaintiffs request the exclusion of causation evidence from Defendants and the exclusion of any causation finding on the verdict sheet.  They argue that Defendants' experts will testify with the assumption that Dr. Welch did not violate the standard of care, and that therefore there is "no evidentiary basis upon which any reasonable juror could conclude that Dr. Welch was both negligent and, yet, not a cause of B.M.'s permanent brachial plexus injury."  Pls.' Mot. at 2, ECF No. 97.

Defendants contend that there are other forces that could have caused the injury even if Dr. Welch violated the standard of care (for example, that the injured arm could have been posterior such that the injury occurred before the head was delivered and before Dr. Welch had the opportunity to perform any maneuvers).

Plaintiffs' request is essentially a motion for reconsideration of the Court's Memorandum and Order Re: Daubert Motions [ECF No. 88].  They attempt to re-litigate the issue of whether Dr. Grimm and other defense experts may proceed by opining in the alternative.  If the jury finds that Dr. Welch

13

laterally bent B.M.'s neck, then Dr. Grimm stated that she would not be able to support Defendants' contentions. See Daubert Hearing Tr. at 143, ECF No. 86 ("If I saw evidence that he had bent B.M.'s neck during the delivery . . . I would not be able to support the defendant's case in that hypothetical, and of course I saw no evidence in this case that there was bending of the neck.").[10] It is up to the jury to find whether there was bending of the neck based on the evidence in this case. And if they do not find bending of the neck, Dr. Grimm's testimony would be relevant to show another potential cause of the injury besides physician traction, i.e., maternal forces of labor.

Plaintiffs essentially seek a directed verdict on causation. Causation issues are at the center of this case and the Court has decided that it will not exclude the competing causation opinions of parties' experts. The Court sees no reason to depart from its earlier reasoning in the Memorandum and Order Re: Daubert Motions [ECF No. 88] and will DENY Plaintiffs' motion.

---

[10] The Court understands Dr. Grimm's statement at the hearing to be limited to anterior shoulder dystocia injuries. In her opinion, a posterior shoulder dystocia injury occurs prior to the head being delivered and thus cannot be caused by bending of the neck. In other words, the only way she would find evidence of bending of the neck would be in an anterior injury situation.

8.  Defendants' Motion In Limine To Preclude References to
    "Alterations" of the Medical Record [ECF No. 98]

Dr. Welch recorded a note regarding B.M.'s birth, and the note was written in two parts.  First, seventeen minutes after B.M.'s delivery, he wrote a one-line note:

> Moderate shoulder dystocia relieved with
> McRoberts maneuver.

Second, about fifteen hours later that same day, he wrote another note that expanded upon the first note:

> Head delivered after 15 minutes pushing.
> Turtle sign encountered.  Downward traction
> applied with minimal descent.  Head of bed
> lowered flat.  McRoberts maneuver performed
> with traction with successful deliv [sic] of
> anterior shoulder.  Total time 30 seconds.
> NICU in attendance.

Because the electronic medical record system records the time of entry, adding the second portion resulted in two separate notes stamped as "Version 1" and "Version 2." Defendants seek to prevent Plaintiffs from referring to the second completed note as inaccurate, false, or altered in a deceitful way.  Plaintiffs argue that it is up to the jury to infer whether any significance should be attached to the two versions, if any.  They argue that a reasonable jury could draw the inference that it was done to create exculpatory evidence to defend a medical malpractice claim.

The Court finds no unfair prejudice to the introduction of the two versions of the notes.  Defendants may cross-examine any

witness about how and why there may be two versions.  The jury is free to make their inferences based upon the testimony.

However, the Court shall exclude any usage of the word "alteration" because it is misleading under the circumstances. The second delivery note is not an "alteration" of the first note; rather, it is simply an addition.  The first delivery note still exists in its original form under a different time stamp.

Accordingly, Defendants' motion is GRANTED IN PART and DENIED IN PART.


9. <u>Defendants' Motion In Limine To Preclude "Golden Rule" Or Other Improper "Reptile Theory" Tactics [ECF No. 99]</u>

Defendants request the exclusion of improper emotional appeals to the jury, including any arguments by Plaintiffs regarding "The Golden Rule" or any "Reptile Theory" arguments. The "Golden Rule" argument asks jurors to put themselves in the proverbial shoes of Plaintiff Dorman when deciding what the Defendants should have done.  The Reptile Theory[11] argument urges the jurors to act as the "conscience of the community" by deciding whether Defendants provided the safest or most reliable treatment or whether Defendants unnecessarily exposed the patient to danger.

---

[11]  <u>See, e.g.</u>, David Ball & Don Keenan, <u>Reptile:  The Attorney's 2009 Manual of the Plaintiff's Revolution</u> (2009).

Plaintiffs argue that the motion is premature and improperly encroaches upon counsel's persuasive style. They confirm they will make no "Golden Rule" arguments and will not argue that the jury should be the "conscience of the community," that the jury should punish the physicians, or that the jury should "send a message" to all physicians with their verdict. They do, however, express their intention to use in argument references to safety rules, stop signs, danger, duty, and harm.

The Court agrees that this motion is premature and presents vague challenges to Plaintiffs' style of argument rather than to any evidence that Plaintiffs intend to introduce. At this time, the Court does not find a need to classify any potential future argument as "reptilian" or inappropriate, especially because counsel's arguments to the jury are permitted a significant degree of latitude.

At the hearing, Defendants stated their concerns about some specific types of questions posed to Dr. Welch, such as "Would you agree that it is your job to keep the patients safe?" or "Would you agree that it is your job to not needlessly endanger patients?" The Court understands Defendants' concern to be that Plaintiffs may try to misrepresent the standard of care. The Court will instruct the jury on the law regarding the standard of care in medical malpractice actions and expects that neither party will misrepresent the law that should be applied by

broadening the scope of liability beyond the court's legal
instructions regarding the standard of care.

Accordingly, Defendants' motion is DENIED without
prejudice.


10.  Defendants' Motion In Limine To Preclude Informed
     Consent Evidence [ECF No. 100]

On the record of proceedings, Plaintiffs stated they are
not pursuing a claim for lack of informed consent and Defendants
stated they will withdraw their defense of assumption of risk.
Accordingly, the substance of Defendants' motion is DENIED as
moot.

Plaintiffs also stated their intention to introduce
testimony about Dr. Welch's pre-delivery actions, specifically,
testimony showing that Dr. Welch may not have been prepared for
the risk of a shoulder dystocia.

This was previously addressed in relation to Defendants'
"Motion In Limine to Preclude Evidence That a Cesarean Section
Delivery Was Required Under The Standard Of Care" [ECF No. 89].
As decided above, the Court will allow Plaintiffs' requested
testimony only to show a potential lack of concern or
assiduousness by Dr. Welch toward Ms. Dorman, which is possibly
relevant to his credibility.  This testimony may not be used to
argue that Dr. Welch should have performed a C-Section and may

not mention the possibility of a C-Section as an alternative procedure in this case. There shall be no argument or suggestion that Dr. Welch's pre-delivery actions violated the standard of care or that he did not receive the patient's informed consent before proceeding.

### 11. Defendants' Omnibus Motion in Limine [ECF No. 103]

Defendants' Omnibus Motion requests the exclusion of: (1) Allegations Lacking Expert Support; (2) Misleading Expert Testimony as to Excessive Traction; (3) Statistical and Misleading Evidence as to the Position of B.M.'s Shoulder; (4) Improperly Edited Clips of Videotaped Depositions; (5) Prior and Pending Lawsuits filed against Defendants; (6) Inadmissible Hearsay Statements; (7) Impermissible Statements Regarding the ACOG Task Force; (8) Impermissible Evidence as to Insurance; (9) Misleading Arguments the Jury Should Send a Message; and (10) Any arguments as to the "The Rules of the Road" and Juror Expectations.

#### a. Allegations Lacking Expert Support

Defendants wish to exclude testimony of medical negligence that lacks supporting expert testimony. Plaintiffs agree and so there appears to be no present dispute to be resolved regarding this issue.

### b.   Expert Testimony as to Excessive Traction

Defendants wish to exclude testimony or argument that uses the specific term "excessive traction," arguing that this term is used interchangeably to describe the standard of care as well as nerve integrity, and that usage of the term may confuse jurors.  Plaintiffs argue that it is impracticable to exclude precise language used by all the experts in this case.

The Court understands that the term "excessive" is sometimes used in regard to the <u>magnitude</u> of force applied and sometimes used in regard to the <u>direction</u> of force applied.  The Court does not wish to issue an Order directing any parties' experts to use particular words or phrases when testifying.  However, the Court does not wish to have the jury misled in any way about how the word "excessive" is used.

For example, Defendants' expert, Dr. Allen, stated that although the magnitude of force would not cause the injury, the direction of force could:

> Q Can pulling too hard cause injury to the
> brachial plexus?
> A Pulling too hard ...
> Q Axially?
> A I don't believe so. Not unless you pull
> the head off.
> Q So it takes bending of the neck with the
> traction or lateral traction?
> A Correct.

Daubert Hearing Tr. at 181, ECF No. 86.

The Court will not preclude experts in this case from using the word "excessive," but directs the parties to be precise about whether the usage of the word refers to magnitude or direction or something else. If the Court finds during the trial that there could be jury confusion about the meaning of "excessive" under the circumstances, it will consider a jury instruction to clarify its meaning.

c.   Evidence as to the Position of B.M.'s Shoulder

Defendants wish to exclude statistical evidence about whether it is the anterior or posterior arm that tends to get lodged in a shoulder dystocia, as well as any testimony that B.M.'s injured left shoulder was in the anterior position during delivery.

The Court has already addressed these issues with regard to Plaintiffs' "Motion In Limine To Exclude Speculation That B.M.'s Left Arm Was Posterior" [ECF No. 96], supra Section II.6, and incorporates its decision herein. Neither party will be able to elicit testimony or make an argument that B.M.'s left arm was posterior or anterior because there is simply no evidence supporting either position. Nor is either party allowed to elicit testimony that B.M.'s left arm was "more likely than not" anterior if that testimony is based on statistics or any statistical studies that are used to suggest that B.M.'s arm was

anterior in this case.  However, the parties are allowed to elicit testimony from experts who, in their personal experience with deliveries in the past, have experienced more anterior shoulder injuries over the course of their career.  If requested by the defense, the Court will issue a cautionary jury instruction at the time such expert testimony is elicited, explaining that there is no statistical evidence or study in this case that suggests it could be one or the other.

### d.  Clips of Videotaped Depositions

Defendants wish to exclude video clips of depositions of Dr. Welch or any other witness that have been "spliced together out-of-order and without context" to give a false and misleading impression contrary to the witness's actual testimony at deposition.

Defendants are not entitled to an Order requiring Plaintiffs to introduce their evidence in any particular order. However, the Court is willing to require both parties to provide advance notice of the video clips they intend to play at trial so that the other side may play other portions of video clips that it deems useful to complete the record.

Parties shall exchange the video clips they intend to introduce at trial at least two business days in advance.  If parties have a dispute about which video clips can be played and

cannot reach a resolution, they shall bring the dispute to the Court for resolution at least one business day in advance.

### e.   Prior and Pending Lawsuits against Defendants

Defendants wish to exclude any evidence of prior and pending lawsuits filed against them.  Plaintiffs agree with this general exclusion as applied to both sides, so there is no pending issue for the Court to resolve.

As discussed at the hearing, parties are permitted to ask experts general questions regarding bias, including the number of cases they have testified in.  However, no details or specifics of any other case shall be mentioned before the jury.

### f.   Hearsay Statements

Defendants request the exclusion of certain hearsay statements, including statements in medical records or from the depositions of Ms. Dorman and Mr. Ming.

The Court finds that it is premature to make a ruling on these types of statements broadly and will address specific objections at the pre-trial conference.  At first glance, some of these statements challenged by the Defendants may be opposing party admissions, proper present sense impressions, then-existing mental, emotional, or physical conditions, or statements made for medical diagnoses or treatment.  The parties

shall prepare specific hearsay objections to address at the pre-trial conference.  Opposing counsel shall be prepared to present the exceptions or exemptions to the hearsay rule that may apply, if any.

### g.    Statements Regarding the ACOG Task Force

Defendants request the exclusion of evidence that their expert, Dr. Dickman, stated that he was not aware of the ACOG Task Force during his deposition.  They argue that this statement is both incorrect and irrelevant.  Plaintiffs argue that this motion is premature and that they should not be required to lay out their trial strategy for the ACOG Task Force findings at this time.

The Court finds that Dr. Dickman's knowledge or lack thereof of the ACOG findings could be relevant to the weight the jury places on those findings and does not see a reason why this line of questioning should be excluded prior to trial.

Defendants appear to be concerned about Plaintiffs referring to the ACOG Task Force in a pejorative way, including by arguing that its report is a litigation document created by the medical defense community.  At this time, it is not clear how such an argument would be impermissible because Dr. Grimm, a defense expert, is one of the authors of the document.  However, under the circumstances, the Court finds that this motion is

premature because Plaintiffs have not yet made any statements about the ACOG Task Force report and may decide not to do so. If warranted, Defendants may renew their request during trial but must state a more definite basis for the exclusion beyond relevance.

### h.   Evidence as to Insurance

Defendants seek an order prohibiting Plaintiffs from the mention of medical malpractice insurance, professional malpractice insurance, professional liability insurance, and/or professional casualty insurance.  Plaintiffs agree, so there is no further action on this issue for the Court.  The Court reminds the parties that the exclusion applies to both sides.

### i.   Arguments the Jury Should "Send a Message" and Arguments as to the "The Rules of the Road" and Juror Expectations

Defendants wish to prevent Plaintiffs from making any argument that the jury should "send a message" to Defendants and physicians in general by finding Defendants liable.  Defendants also wish to prevent Plaintiffs from arguing that the practice of medicine is like driving a car and that one must follow "the rules of the road" so that those around them will be "safe." They argue that these types of arguments tend to encourage lay opinions on the standard of care.

This request is related to Defendants' Motion In Limine To Preclude "Golden Rule" Or Other Improper "Reptile Theory" Tactics [ECF No. 99], in that it seeks to prevent Plaintiffs from making certain types of arguments. Plaintiffs confirm they will make no "Golden Rule" arguments and will not argue for the jury to be the conscience of the community, to punish the physicians, or to "send a message" to all physicians. The Court will not issue an Order requiring the Plaintiffs to refrain from any potential future type of argument, but will entertain objections at trial to arguments that mischaracterize the law to be applied by the jurors.

Finally, Plaintiffs wish to argue that any verdict against Defendant Welch does not constitute "punishment" for him. Defendants strongly object to such an argument, citing several professional consequences Dr. Welch would face if a verdict were to be found against Defendants. The Court understands Plaintiffs' argument to be that this case is not a professional discipline proceeding, and is willing to consider a limiting instruction to that effect. The parties are already in agreement that there will be no discussion of insurance issues in connection with this trial.

Accordingly, Defendants' omnibus motion is GRANTED IN PART and DENIED IN PART.

### 12.  Dr. Allen's Testimony as a Rebuttal Witness

Finally, parties discussed whether Dr. Allen (a Plaintiffs' causation expert) could be solely a rebuttal witness to Dr. Grimm, or whether he should be in Plaintiffs' case-in-chief. Defendants are concerned that Plaintiffs intend to split their case and get the last word at trial, when Dr. Allen is not a true rebuttal witness.  Plaintiffs are concerned about having to anticipate all the issues that may be raised during Dr. Grimm's testimony and not being able to call Dr. Allen again to rebut her testimony.

The Court intends to be flexible about recalling expert witnesses and may be willing to permit rebuttals and even sur-rebuttals if warranted.  Under the circumstances, the Court requests that parties provide legal briefing regarding their positions and be prepared to discuss this issue at the pretrial conference.


## III.    CONCLUSION

Accordingly:

1.  Defendants' Motion In Limine To Preclude Evidence That A Cesarean Section Delivery Was Required Under The Standard Of Care [ECF No. 89] is DENIED as moot.

2.  Plaintiffs' Motion In Limine To Exclude Assumption Of Risk [ECF No. 92] is DENIED as moot.

3.  Defendants' Motion In Limine To Exclude Testimony Regarding "Personal Care Assistance" Damages [ECF No. 93] is DENIED.

4.   Plaintiffs' Motion In Limine To Preclude Cumulative
     Expert Testimony [ECF No. 94] is DENIED without
     prejudice.

5.   Plaintiffs' Motion In Limine To Preclude Defendants From
     Offering Undisclosed Expert Testimony [ECF No. 95] is
     DENIED.

6.   Plaintiffs' Motion In Limine To Exclude Speculation That
     B.M.'s Left Arm Was Posterior [ECF No. 96] is GRANTED IN
     PART and DENIED IN PART.

7.   Plaintiffs' Motion In Limine To Exclude Consideration Of
     Causation At Trial [ECF No. 97] is DENIED.

8.   Defendants' Motion In Limine To Preclude References to
     "Alterations" of the Medical Record [ECF No. 98] is
     GRANTED IN PART and DENIED IN PART.

9.   Defendants' Motion In Limine To Preclude "Golden Rule" Or
     Other Improper "Reptile Theory" Tactics [ECF No. 99] is
     DENIED without prejudice.

10.  Defendants' Motion In Limine To Preclude Informed Consent
     Evidence [ECF No. 100] is DENIED as moot.

11.  Defendants' Omnibus Motion in Limine [ECF No. 103] is
     GRANTED IN PART and DENIED IN PART.

12.  Defendants have filed briefing regarding rebuttal and
     sur-rebuttal witnesses [ECF No. 125].  Any response shall
     be filed by June 1, 2018.


     SO ORDERED, this Tuesday, May 29, 2018.


                              /s/___    __ _
                          _____
                              Marvin J. Garbis
                         United States District Judge